**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Amanda M. Watkins**                    **Case No.: C2-08-134**

          **Plaintiff**                    **Judge Graham**

    **v.**                    **Magistrate Judge Kemp**

**New Albany Plain Local Schools, et al.,**

        **Defendants.**

<u>OPINION AND ORDER</u>

This matter is before the Court on defendants' motions for summary judgment pursuant to Fed. R. Civ. 56(c).  Plaintiff has responded to both motions in a single memorandum in opposition.

**I.**    **Factual Background**

Plaintiff Amanda M. Watkins is an African-American female who was a student at New Albany High School ("high school") until she graduated in 2008.  Defendants are the New Albany Plain Local Schools (NAPLS), Principal Scott Stewart (Stewart), Assistant Principal Richard Stranges (Stranges), Girls Track and Field Coach Otis Winston, (Winston), District Athletic Director Rex Reeder (Reeder), Security Officer Richard Fisher (Fisher), Dean of Students Regina LeMaster (LeMaster), the Village of New Albany (Village) and New Albany Police Officer Joel Strahler (Strahler).  NAPLS, Stewart, Stranges, Winston, Reeder, Fisher and LeMaster are referred to collectively as the "school defendants."  All of the individual defendants are sued in their official and individual capacities.

On March 20, 2007, plaintiff was preparing for track practice when her ex-boyfriend, Gerald Nixon[1] (Nixon), confronted her near the locker room and asked to talk. According to plaintiff, the two went outside, around the corner from the door and under an awning facing the track. At that point they began arguing. Nixon called her a "bitch" and a "ho" and told her no one would ever love her. (Watkins deposition at p. 111; 113). Plaintiff then pushed Nixon out of her way and called him a "bastard." (Id). At that point, Nixon lifted his hand that was holding a cell phone and struck plaintiff across the face, knocking her to the ground. (Id). Defendants Stranges, Reeder and Fisher became aware of the assault and at least two witness statements were taken from two other students. (Id at 112; Ex 2-6 to Watkins deposition). The school defendants do not deny that Nixon hit plaintiff while on school property.

On March 22, 2007 plaintiff and her mother, Erica D. Watkins (Mrs. Watkins), met with Principal Stranges and Dean LeMaster to discuss the March 20th incident. Plaintiff completed her incident report at that time. (See Ex. 1 to Watkins deposition). According to plaintiff, at this meeting these defendants told her that one of the school's security cameras had recorded the March 20th incident and that there were several witness statements. She also alleges that these defendants told her that the recording clearly showed that Nixon had assaulted her. (Watkins deposition at p. 183). Plaintiff asserts that she and her mother were not allowed to view the videotape and were only shown a few of the witness statements. (Id). She also alleges that Principal Stranges told her to drop the matter and then suspended her. Plaintiff testified that at this meeting she asked Stranges and LeMaster to provide a resource officer or some other person to sit in on the two classes, English and Choir, that she shared with Nixon. (Id at p. 131).

---

[1] Nixon is also a defendant in this case. After he failed to answer the complaint, the clerk entered default judgment against him on March 24, 2009. (doc. 42).

The school defendants deny that plaintiff was suspended as a result of the March 20th incident.  They also deny the existence of any video recording of the assault.  Defendant Fisher is the Coordinator for Safety and Security at the high school.  (Fisher deposition at p. 18).  He testified that he was involved in setting up the video monitoring at the high school and is familiar with the number and locations of those cameras.  (Id. at p. 28; 32).  He testified that he is also familiar with the area where the March 20, 2007 incident involving plaintiff and Nixon occurred and with the location of all nearby video cameras.  (Id. at p. 33).  Fisher testified that the March 20, 2007 incident occurred "out of the view of any of the cameras."  (Id. at p. 38).  He further testified that the day after the incident, on March 21, 2007, he reviewed the video recordings from the cameras and there was no recording of any assault.  (Id. at p. 49).  Defendant LeMaster testified that she never told plaintiff and her mother that the assault was recorded.  (LeMaster deposition at pp. 52-53).  LeMaster also testified that the assault took place in an area where there were no security cameras to record the incident.  (Id. at pp. 56-57).  Plaintiff does not know where the school security cameras are located (Watkins deposition at p. 118) and has not provided any evidence that there were working cameras in the area that could have captured the incident with Nixon.

Approximately one week after the incident, plaintiff reported to Stewart and Strahler that Nixon was "lingering" in areas where plaintiff would be by herself at school and that this was making her uncomfortable.  (Id. at p. 131).  Plaintiff did not have a protective order in place at this time.  (Id).  Sometime in April 2007, Mrs. Watkins filed a juvenile court action on plaintiff's behalf against Nixon alleging assault and harassment.   On June 19, 2007, plaintiff obtained a No Contact Order against Nixon from the juvenile court that barred Nixon from coming near

plaintiff or her family. (Ex. 7 to Watkins deposition). On August 28, 2007, plaintiff observed

Nixon standing near her locker and reported this fact to Defendant Fisher and Officer Strahler.

Strahler is the officer assigned as the School Resource Officer (SRO) to the New Albany school

district. Plaintiff informed Fisher and Strahler that Nixon had stalked and threatened her on

school grounds and that she had a court order that prohibited such contact. Plaintiff claims that

Strahler denied the existence of the order and refused to act or to report the abuse to the

appropriate Children's Service Agency. Plaintiff admits that Officer Strahler asked her to

provide a copy of the order. (Watkins deposition at p. 141). Plaintiff testified that neither she

nor her mother provided a copy of any order and Officer Strahler avers that he never received a

copy of the No Contact Order. (Id. at p. 141; 147; Strahler Affidavit at ¶ 5). Plaintiff's mother

avers that she provided a copy of the order on August 27, 2007. (Watkins' Affidavit at ¶ 9).

On October 26, 2007, apparently after the juvenile case was dismissed, plaintiff's mother

applied for a Civil Protection Order against Nixon on behalf of plaintiff. The application

specifically complained of the March 20, 2007 incident, the August 28, 2007 incident and a

September incident that occurred off campus. (Ex. 8 to Watkins deposition). The plaintiff

never informed the school about the September incident nor did she file a police report.

(Watkins deposition at p. 156-157). The court issued a temporary, ex parte civil protection order

("temporary CPO") that included the statement that, "nothing herein inhibits [Nixon] from

attending school." (Ex. 9 to Watkins deposition).

On November 7, 2007, plaintiff complained to Officer Strahler about another incident

involving Nixon in which he allegedly interrupted a conversation she was having with other

classmates. (Watkins deposition at p. 160-161). Plaintiff completed a witness statement and

returned to class. (Id. at 162). She did not provide a copy of the temporary CPO to Officer Strahler, although Mrs. Watkins avers that she provided a copy on that date. (Watkins Aff. at ¶ 9). Officer Strahler then contacted the New Albany prosecutor and had the impression that the temporary CPO was not applicable at school. (Strahler Aff. at ¶ 8; Ex. 11 to Watkins deposition). The next day, the court renewed the ex parte Order, requiring Nixon to stay 500 feet from plaintiff, except at school where the distance provision was modified to five (5) feet to allow Nixon to continue attending school. (Ex. 12 to Watkins deposition). On November 20, 2007 plaintiff informed Officer Strahler that Nixon violated the temporary CPO by coming within three feet of her and making a punching gesture toward a friend. (Watkins deposition at p. 171). Officer Strahler advised plaintiff's mother to file a police report but plaintiff does not believe a report was filed. (Id. at p. 175). On December 12, 2007 after a court hearing, the magistrate denied plaintiff's request for a permanent protective order. (Ex. 13 to Watkins deposition). The magistrate's recommendation was adopted by court order on December 28, 2007. (Ex. 14 to Watkins deposition).

On December 19, 2007, plaintiff filed a complaint against defendants in the Franklin County Court of Common Pleas. The matter was removed to this court on February 11, 2008. Plaintiff filed her amended complaint on May 28, 2009. In her complaint plaintiff alleges violations of civil rights pursuant to 42 U.S.C. §1983, conspiracy to violate civil rights in violation of 42 U.S.C §1985, spoliation of evidence, negligence, and assault and battery.

## II. Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." See Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also Longaberger, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477

U.S. at 251-52.  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

## III. Legal Analysis

### A. 42 U.S.C. §1983

#### 1. Access to the Courts

In her amended complaint, the plaintiff claims that the individual defendants violated her civil rights by failing to protect her from Nixon's stalking and menacing, by destroying evidence related to Nixon's misconduct, and in treating white students in similar situations differently.  In her responsive memorandum, however, she focuses on the defendant's alleged destruction of evidence, which she asserts violated her constitutional right of access to the courts. [2] Specifically, she asserts that because defendants refused to provide her with a copy of the videotaped assault and all witness statements, the prosecutor was unable to prosecute Nixon for assault and plaintiff was unable to show a violation of the temporary CPO and to obtain a permanent CPO.

---

[2]     Plaintiff has not alleged any facts suggesting that Officer Strahler or the Village had anything to do with the alleged destruction of the video.  Plaintiff testified that Strahler was not present during the March 22, 2007 meeting with LeMaster and Stranges and has no knowledge that Officer Strahler destroyed any videotape. (Watkins deposition at p. 280).

In order to successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify "a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." Adams v. Metiva, 31 F.3d 375, 386 (6th Cir. 1994). There is no "federal constitutional right of access to the criminal courts." Mooneyhan v. Hawkins, 1997 U.S. App. LEXIS 30223, (6th Cir. Oct. 29, 1997) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct. 1146 (1973))(a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another). Thus, as regards her allegation that defendants alleged actions resulted in non-prosecution of the criminal assault charges, plaintiff has failed to allege a right protected by the constitution.

There is, however, a constitutional right of access to the court in civil matters. Graham v. National Collegiate Athletic Ass'n, 804 F.2d 953, 959 (6th Cir. 1986) ("It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution"). In examining whether a plaintiff's constitutional right to access the courts has been violated, the court must look at whether the alleged abuse occurred pre-filing or post-filing of the suit. Swekel v. City of River Rouge, 119 F.3d 1259 (6th Cir. 1997). When the abuse occurs post-filing, "the aggrieved party is already in court and that court usually can address the abuse, and thus, an access to courts claim typically will not be viable." Id at 1263. If the abuse occurs pre-filing, then plaintiff "must establish that such abuse denied her 'effective' and 'meaningful' access to the courts." Id. This must be done by showing that the "defendant's actions foreclosed her from filing suit in state court or rendered ineffective any state court remedy she previously may have had." Id.

Plaintiff does not make any allegation regarding the timing of the alleged destruction of the video evidence but presumably she would argue that it took place before the filing of her juvenile court complaint.  Thus, in order to prevail on her claim, she must present evidence that she was denied effective and meaningful access to the courts.  Plaintiff alleges that without the video of the assault, the prosecutor had to dismiss the juvenile case against Nixon which resulted in plaintiff being unable to obtain a permanent CPO.  Plaintiff's claim is entirely speculative because there is no evidence that the failure to pursue the juvenile court claim in any way hindered her ability to obtain her civil protective order.

However, even assuming that the juvenile court action was dismissed because there was no video evidence, and further assuming that there was a connection between the juvenile court dismissal and the CPO, plaintiff has failed to adduce any evidence that she was denied meaningful and effective access to the courts.  The only evidence plaintiff offers in support of her position that the lack of video evidence prevented the prosecution of Nixon, is an affidavit from plaintiff's mother Erica Watkins.  In her affidavit, Mrs. Watkins states that the prosecutor told her that when she attempted to obtain the videotape, Fisher and Stranges told the prosecutor that it had been destroyed.  (Watkins affidavit at ¶ 11).   Mrs. Watkins also states that the prosecutor told her that they could not pursue the case further because there was a lack of evidence.  (Id).  These statements in Mrs. Watkins' affidavit are hearsay and are not admissible. See Fed. R. Evid. 801(c) (hearsay is a statement, other than one made by the declarant, offered in evidence to prove the truth of the matter asserted).  Courts cannot consider inadmissible hearsay in an affidavit when ruling on a summary judgment motion. See Siple v. Sullivan, No. 99-3003,

1999 U.S. App. LEXIS 26472 (6th Cir. Oct. 14, 1999)(citing <u>U.S. Structures, Inc. v. J. P. Structures, Inc.,</u> 130 F.3d 1185, 1189 (6th Cir. 1997)).

However, even if Mrs. Watkins' affidavit was admissible, plaintiff still cannot show that the defendants' actions "foreclosed her from filing suit in state court or rendered ineffective any state court remedy she previously may have had." <u>Swekel</u>, 119 F.3d at 1263-64. Plaintiff was not foreclosed from filing suit for a civil protection order in state court and in fact pursued her case in the state system. Plaintiff knew the identity of the person who had assaulted her, had personal knowledge regarding the assault and had personal knowledge of all other alleged incidents involving Nixon. At the hearing on her motion for a permanent civil protective order, plaintiff was given the opportunity to present her case over two days and to call witnesses on her behalf. The fact that the plaintiff chose to only call three witnesses, one of whom had almost no personal knowledge of any incidents between plaintiff and Nixon, and did not testify on her own behalf, cannot possibly be attributed to a lack of video evidence. Moreover, it is impossible to conclude that the missing video evidence, rather than her failure to testify, was the reason she did not get a permanent protective order.

Plaintiff has failed to demonstrate a genuine issue of fact as to her claim that she was denied her constitutional right of access to the courts under the Due Process Clause of the Fourteenth Amendment.[3]

---

[3]     Nor can she make a claim that she was denied access under the Petition Clause of the First Amendment. Actions under the Petition Clause "are limited to matters of public concern." <u>Jones v. Union County ones v. Union County,</u> 296 F.3d 417, 426 (6th Cir. 2002) (the plaintiff's specific request for an order of protection against her ex-husband was "far more a matter of private interest than public concern")(quoting <u>Valot v. Southeast Local Sch. Dist. Bd. of Educ.</u>, 107 F.3d 1220, 1226 (6th Cir. 1997)).

## 2. Failure to Protect

Plaintiffs also allege that the individual defendants violated her civil rights in failing to protect her from assault by Nixon. Generally, a State is not required under the Due Process Clause to "protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago County DSS, 489 U.S. 189, 196, 109 S. Ct. 998 (1989). However, the Supreme Court has recognized two exceptions to this general rule. Id at 196. The first exception is where there is a "special relationship" created or assumed by the State with respect to certain individuals. Id. at 198 (stating that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals"). For the special relationship exception to apply, there must be some form of forced or involuntary custody by the State. See, Id at 198-200 (citing Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976)(incarcerated prisoners); Youngberg v. Romeo, 457 U.S. 307, 102 S. Ct. 2452, (1982), (involuntarily institutionalized mental patients)). The "special relationship" exception does not apply to the relationship between school officials and their students. See, Oldham v. Cincinnati Pub. Schs, 118 F. Supp. 2d 867, 875 (S.D Ohio 2000) (citing Sargi v. Kent City Bd of Educ, 70 F.3d 907 (6th Cir. 1995) and Doe v. Claiborne County, Tenn., 103 F.3d 495, 505 (6th Cir. 1996) for the proposition that a school's "in loco parentis status or a State's compulsory attendance laws do not sufficiently 'restrain' students in a manner that would raise a school's common law obligation to the rank of a constitutional duty toward its students"). Clearly, the special relationship exception does not apply in this case.

The second exception is where the State has created the danger by making the individual more vulnerable to private acts of violence. DeShaney, 489 U.S. at 201 (stating "while the State

may have been aware of the dangers that [the child] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them").  The Sixth Circuit has recognized the "state-created danger" doctrine which requires the claimant to show: "(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff." Jones v. Reynolds, 438 F.3d 685, 688 (6th Cir. 2005) (quoting Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir. 2003)).

Plaintiff claims that the second DeShaney exception applies in this case because the school affirmatively acted to destroy material evidence of a crime so that Nixon was able to continue his threatening behavior towards plaintiff.   The plaintiff's argument is without merit. First, the school defendants have provided substantial evidence to show that there was never a video of the assault.   Defendant Fisher testified that on the day after the assault, he reviewed the video recordings on the security cameras and there was no recording of the assault.  (Fisher Deposition at p. 49).  He further testified that there are no security cameras in the location where the assault took place and therefore no video could have been taken.  (Id at p. 52).  Defendant LeMaster also testified that the assault took place in an area where there were no security cameras to record the incident and that she was not aware of any video recording and had never seen any such recording.  (LeMaster deposition at pp. 56-57; 52).  The only evidence that such a tape existed is plaintiff's testimony that defendants Stranges and LeMaster said there was a tape. Plaintiff has not produced any evidence to show that there was a camera that could have

videotaped the alleged assault. She has not produced any evidence to contradict the testimony of either Fisher or LeMaster. Moreover, the plaintiff has not provided any evidence to support her contention that the absence of a video of the assault allowed Nixon to continue harassing her. Plaintiff was able to obtain a temporary CPO and the school did respond to plaintiff's concerns by moving her locker, monitoring the hallways, and moving her seat away from Nixon's in any joint classes. (LeMaster deposition at p. 46, 50; Watkins deposition at pp. 133-134).

Nor has plaintiff shown that either <u>DeShaney</u> exception applies to Officer Strahler. There was no special relationship between Strahler and plaintiff. <u>Foy v. City of Berea</u>, 58 F.3d 227, 232 (6th Cir. 1995) (stating "every encounter between police officers and private individuals does not create a 'special relationship' that imposes an affirmative duty on the officers to protect those individuals from harm subsequently inflicted upon them by private parties"). Officer Strahler never had plaintiff under his custody or control such that a special relationship could be found. Moreover, the evidence shows that Strahler was not aware of any trouble between Nixon and plaintiff prior to March 20, 2007, he was not present at the time Nixon assaulted plaintiff and was not involved in the investigation of the assault. (Strahler Affidavit at ¶ 3). Strahler repeatedly asked plaintiff and her mother to provide a copy of the restraining order. Plaintiff did not do so and did not believe that her mother did so, and Strahler avers that he never received a copy of the restraining order. (Watkins deposition at p. 141; 147; 161 )(Strahler Aff. at ¶ 5). Plaintiff's mother avers that she did fax the civil protective order in on two different occasions, although plaintiff has not provided any fax confirmation sheets or other evidence. Moreover there is evidence that Officer Strahler took it upon himself to contact the New Albany prosecutor for information on the contents of the temporary CPO and was given

13

the impression that the CPO did not apply at school.   (Strahler Aff. at ¶ 6); (Ex. 11 to Watkins deposition).  Plaintiff has failed to raise a genuine issue of material fact that would allow a jury to conclude that the state-created danger exception applies to create liability for a private actor's violence.

### 3.        Village of New Albany: Official Policy or Custom

Plaintiff's complaint does not allege a claim against the Village for violation of 42 U.S.C. §1983.  See Amended Complaint at ¶ 48 ("the following averments in this claim for relief are alleged against all individual defendants").  However, the Village has moved to dismiss this claim on the grounds that plaintiff has not established that her rights were violated pursuant to a custom or policy.  Plaintiff has responded that the Village had a policy of knowing that its school resource officer Strahler was not doing his job and did nothing to remedy the situation. Plaintiff's evidence is simply conclusory statements.

A municipality cannot be held liable under §1983 "unless the 'action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,' or the 'constitutional deprivations (were) visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels.'"  Edmonds v. Dillin, 485 F. Supp. 722, 725 (N.D. Ohio 1980) (quoting Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978)).

Nowhere in plaintiff's complaint does she allege that any conduct was carried out pursuant to a policy of custom of the Village.  In her memorandum in opposition, plaintiff makes a blanket assertion that the Village knew that Officer Strahler was failing to carry out his duties

14

at school and did nothing to prevent this from happening.  The plaintiff does not provide a single piece of evidence showing what the Village knew or did not know or approved or did not approve.  In order to establish municipal liability on the basis of a custom or policy, plaintiff has to present some proof of an action taken by a municipal policymaker. See Oklahoma City v. Tuttle, 471 U.S. 808 (1985)(improper to allow a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker).  Plaintiff has not alleged, nor has she provided any evidence, in support of her §1983 claim against the Village.  Accordingly, the claim is dismissed as to the Village of New Albany.

### 4.      Equal Protection

In her complaint, the plaintiff alleges that the school violated her equal protection rights by treating similarly situated white students differently than she was treated.  However, in her responsive pleading, plaintiff does not address her equal protection claim.  In order to survive a motion for summary judgment, plaintiffs must present affirmative evidence, beyond the pleadings, that would allow a jury to return a verdict in her favor.   Jasar Recycling, Inc. v. Major Max Mgmt. Corp., 2010 U.S. Dist. LEXIS 5086 (N.D. Ohio January 22, 2010) (Guarino v. Brookfield Township Trustees, 980 F.2d 399, 403 (6th Cir. 1992)(citations omitted)).

Plaintiff's complaint contains a single allegation that "defendant's investigated and/or took appropriate action against students under circumstances involving similarly situated white complainants." (Amended Complaint at ¶ 50).  The amended complaint does not contain any factual allegations in support of this claim.  However, in her deposition plaintiff testified that, in response to the March 20, 2007 incident involving Nixon, the school defendants treated her

differently than they would have treated a white student. Presumably, plaintiff is referring to the fact that she believes the school suspended her after the fight with Nixon.[4]

To prevail on an equal protection claim, plaintiff must show that the school defendants treated her differently than they did similarly situated white students. <u>See</u>, <u>Hussein v. City of Perrysburg</u>, 535 F. Supp. 2d 862, 871 (N.D. Ohio 2008) (in making an equal protection challenge, plaintiffs bear the initial burden of demonstrating that a discrimination of some substance has occurred against them which has not occurred against others similarly situated). In addition, there must be evidence that the defendants treated similarly situated students differently for an unlawful reason. <u>Id.</u> (citing <u>Snowden v. Hughes</u>, 321 U.S. 1, 8, 64 S. Ct. 397 (1944); <u>Charles v. Baesler,</u> 910 F.2d 1349, 1356-57 (6th Cir. 1990)).

At her deposition, plaintiff testified regarding various other fights that occurred at school involving white students and the punishment they received. All of her purported evidence of disparate treatment is based on hearsay, speculation and rumor. Speculation ungrounded in fact is insufficient to withstand a motion for summary judgment. <u>See</u> <u>Bryant v. Commonwealth of Kentucky</u>, 490 F.2d 1273, 1274 (6th Cir. 1974)("mere conclusory and unsupported allegations, rooted in speculation" do not meet burden to withstand summary judgment); <u>see</u> <u>also</u>, <u>Chapin v. Nationwide Mut. Ins. Co.</u>, No. 2:05-cv-734, 2007 U.S. Dist. LEXIS 21176 (S.D. Ohio Mar. 26,

_____

[4]    The school defendants deny that plaintiff was suspended but instead was asked to remain at home on an excused absence in order for the "drama" of the fight to pass. (LeMaster deposition at p. 41). Plaintiff has not produced any document or school records indicating that she was suspended. In any event, under school policy, any student who is involved in an altercation, regardless of whether they started the fight or not, is to be suspended. (<u>Id</u>. at p. 36-37).

2007)(a plaintiff's generalizations, conclusory statements, and own subjective beliefs are insufficient to support a finding of discrimination).

Plaintiff testified regarding a fight she witnessed when a black student named M.W. hit a white student named C.S. in the face. (Watson Deposition at p. 251). Plaintiff testified that C.S. was not disciplined and M.W. was told to stay away from the school. (Id.). However, plaintiff did not have any first hand knowledge as to the discipline received and had only heard about it from M.W and C.S.'s mother. (Id. at 252). Plaintiff also testified regarding a fight between a black student named J.T. and a white student named T.G. (Id. at 252-254). Plaintiff did not witness the entire fight but heard that J.T. was suspended for longer than T.G. and had to attend anger management classes. (Id.). Plaintiff learned this from the stepbrother of J.T.'s stepsister and from J.T.'s mother. (Id. at 254). The third incident plaintiff testified about involved a black student named B. and a "mixed race" student named D. who got into a fistfight. One of the boys told plaintiff's brother that B. was suspended but plaintiff did not know what discipline D. received. (Id. at 255-256).

Plaintiff also alleges that she was treated differently than Nixon for the incident in question and that he received little or no discipline for skipping class and cheating. (Watkins deposition at pp. 301-302). Plaintiff testified that Nixon's coaches, who are not defendants in this suit, would "let him get away with things." (Id. at p. 301). She testified that she believed that Nixon, who is also African-American, was treated differently because he "was a star athlete" and "putting points on their scoreboard." (Id. at pp. 299-300). Even if Nixon was treated better than plaintiff because of his athleticism, this is not a basis for an equal protection claim as "non-athletes" or "less recognized athletes" are not a protected class.

Plaintiff has not provided any admissible evidence that she was treated differently than similarly situated white students and has therefore failed to raise a genuine issue of material fact with regards to whether defendants violated her equal protection rights. Accordingly, summary judgment is granted on her equal protection claim.

### 5. Additional Claims against LeMaster and Winston

In addition to her allegations stemming from Nixon's assault, plaintiff also alleges that she was subjected to harassment and disparate treatment by Defendant Otis Winston, the girls track and field coach, and by Defendant LeMaster. Plaintiff claims she was harassed by Winston and threatened that unless she trained with Winston, she would be barred from the regular season track team. In her complaint, she alleges that in 2006, while she was at an Ohio State University training camp, Winston arrived uninvited and physically grabbed her and shouted at her. (Amended Complaint at ¶26). She also alleges that she was adversely treated because she was locked out of the weight room, harassed by co-athletes, and told to "fetch" equipment like a dog. (Id at ¶29). A review of plaintiff's deposition testimony, however, contradicts the allegations of her complaint. Plaintiff testified that Winston never physically assaulted her or touched her in any way while at the OSU camp. (Watkins deposition at p. 43). The factual basis for her allegations of harassment include that her claim that Winston showed up at an off-campus training event and asked her why she was not training with him. (Id. at p. 36). Plaintiff felt this was "inappropriate." (Id. at 42). Plaintiff also testified that other track team members asked her why she would not train with Winston and she believed that Winston was having the other team members harass her. (Id. at pp. 66-67). Plaintiff did not like Winston and believed that he played favorites. (Id. at p. 66). As regards her allegation that she was locked out of the

weight room, plaintiff testified that when the weight room was locked, everyone was kept out, not just her. (Id. at p. 64).

Plaintiff has not stated a claim under 42 U.S.C. §1983 (or any other statute or common law) against Winston, let alone provided any evidence that would withstand defendants' motion for summary judgment.  As detailed earlier, in order to establish a §1983 claim, plaintiff must show that there was a violation of a constitutional or statutory right. Plaintiff does not allege, nor is there any evidence, that Winston singled her out based on her status in a protected class.   As there is no constitutional right to a good relationship with one's high school track and field coach, plaintiff's claims against Winston cannot withstand summary judgment.

Plaintiff also alleges disparate treatment by LeMaster who allegedly unfairly punished plaintiff for being insubordinate with a substitute teacher and for excessive tardiness.   Plaintiff has failed to even allege a claim against LeMaster, let alone provide factual support for any claim.  In her complaint, plaintiff asserts that LeMaster did not let her reschedule Saturday School (a form of student punishment) so that she could attend a track meet but let other students reschedule.  However, she does not allege that she was treated differently based on her race or gender.  The complaint also alleges that LeMaster ordered plaintiff handcuffed and escorted off campus on May 21, 2007.   Again, plaintiff makes no allegation that LeMaster treated her differently than other students based on her race or gender.  Moreover, the evidence shows that plaintiff was asked to leave campus on May 21, 2007 because she had been suspended on the previous Friday and had attempted to return to school and attend class anyway.  (Watkins deposition at pp. 195-220).  LeMaster is entitled to summary judgment on these claims.

### 6. Qualified immunity

Plaintiff has sued Stewart, Stranges, Winston, Reeder, Fisher and LeMaster, and Strahler (individual defendants) in their individual capacity for violation of 42 U.S.C. §1983 and the Fourteenth Amendment. The individual defendants assert that the plaintiff's claim against each of them should be dismissed because they are entitled to qualified immunity.

Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Sixth Circuit evaluates qualified immunity claims using a three-part inquiry. See Feathers v. Aey, 319 F. 3d 843, 848 (6th Cir. 2003). The first is whether the plaintiff has alleged facts that show violation of a constitutionally protected right. The second is whether the right was clearly established, and the third is whether the plaintiff has alleged sufficient facts to establish that the official's conduct was unreasonable in light of the clearly established constitutional right. Id.

As set forth above in detail, plaintiff has not shown a violation of a constitutionally protected right. As such, the court need not analyze whether the right was clearly established or whether the individual defendants' actions were unreasonable in light of the clearly established constitutional right. Sawicki v. City of Brunswick Police Dep't, No. 1:07CV803, 2008 U.S. Dist. LEXIS 102799 (N.D. Ohio Nov. 19, 2008) (citing Saucier v. Katz, 533 U.S.194, 201, 121 S. Ct. 2151 (2001) (overruled on other grounds) (If no constitutional right has been violated, there is no need for the court to inquire further, as the officer will be entitled to immunity).

**B.      42 U.S.C. §1985**

42 U.S.C. § 1985 prohibits conspiracies interfering with civil rights.  To state a claim for relief under 42 U.S.C. §1985(3), a complaint must allege that defendants "1) conspired 2) for the purpose of depriving any person or class of the equal protection of the laws, and that 3) one or more of the conspirators committed an act in furtherance of the conspiracy, 4) 'whereby another was injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States.'"  Domokur v. Milton Township Bd of Trustees, No. 4:07CV00247, 2007 U.S. Dist. LEXIS 66710 (N.D. Ohio Sept. 10, 2007) (citations omitted).

The claim must be based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); O'Neill v. Grayson County War Memorial Hospital, 472 F.2d 1140 (6th Cir. 1973) (a §1985(3) claim "must be founded on a class-based invidious discrimination.").  That is, 42 U.S.C. § 1985(3) covers "only those conspiracies against: (1) classes who receive heightened protection under the Equal Protection Clause; and (2) those individuals who join together as a class for the purpose of asserting certain fundamental rights." Warner v. Greenbaum, Doll & McDonald, 104 Fed. Appx. 493, 498 (6th Cir. 2004) (citations omitted). A class covered under §1985(3) must be "more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors."  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993).

Plaintiff has completely failed to respond to defendants' motions for summary judgment on the 42 U.S.C. §1985 claim.  In her complaint, the plaintiff alleges that the defendants conspired to violate her civil rights by refraining from reporting or investgating plaintiff's

complaints, refusing to take appropriate action, and in losing or destroying evidence. Plaintiff does not allege that any action was motivated by invidiously discriminatory animus. Although plaintiff is African-American and female, she does not allege that the conspiracy was aimed at her because of her race or sex nor does she provide any evidence to support such a conclusion. Moreover, in her deposition, plaintiff testified that she believed that the school treated Nixon (who is also African America) differently than her, not because of his sex or race, but because he was a "star athlete." (Watkins deposition at p. 298-299). Obviously, the fact that Watkins was not considered a "star athlete" does not make her a member of a class requiring heightened protection.

Defendants' motion for summary judgment on plaintiff's 42 U.S.C. §1985 claim is granted.

### C.     Spoliation of Evidence

Spoliation "is the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction." In re Smartalk Teleservices, Inc. Securities Litigation, 487 F. Supp. 2d 947, 949 (S.D. Ohio 2007)(quoting Beck v. Haik, 377 F.3d 624, 641 (6th Cir. 2004)). In analyzing the plaintiff's spoliation claim, the court will apply Ohio law. Id. ("the rules that apply to an alleged spoliation of evidence and the appropriate sanctions are defined by state law").

Under Ohio law, in order to prevail on a claim for spoliation of evidence, the plaintiff must establish the following elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of the defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the

plaintiff's case, and (5) damages proximately caused by the defendant's acts." <u>Smith v. Howard Johnson</u>, 67 Ohio St.3d 28, 29 (1993). If the plaintiff shows that the defendant willfully destroyed evidence, the burden shifts to the defendant to persuade the trial court that the plaintiff was not prejudiced by the destruction of evidence. <u>Bright v. Ford Motor Co.</u>, 63 Ohio App. 3d 256, 578 N.E.2d 547, 550 (Ohio Ct. App. 1990).

Plaintiff has provided evidence that the defendants knew that there was pending or probable litigation: the school knew that an assault had happened and that plaintiff had or was attempting to obtain a protective order against Nixon. However, there is a dearth of evidence to support the remaining three elements of a spoliation claim. First, as discussed previously, the defendants have provided ample evidence establishing that no video of the assault ever existed in the first place. (Fisher deposition at pp. 18 – 49, stating he is familiar with the location of the security cameras, he was familiar with the location of the March 20, 2007 incident and that there are no cameras that would have recorded the incident, and that he personally reviewed the recordings from the camera and did not see the altercation); (LeMaster deposition at pp. 52, 56). Other than the alleged statements of LeMaster and Fisher, plaintiff has not provided any evidence to support her claim that there was a video of the assault. She did not provide evidence that any of the cameras at the school could have even captured the fight with Nixon.

Moreover, even if a video did exist and was lost or destroyed, plaintiff has failed to produce any evidence that the alleged destruction of the video caused a disruption of her case or that she was damaged as a result. In support of her claim that the destruction of the video prevented the prosecutor from making a case against Nixon before the juvenile court, plaintiff cites to an affidavit from her mother. As discussed previously, in this affidavit Mrs. Watkins

recites what she says she was told by the Prosecutor: that the school destroyed the video and therefore the case had to be dismissed. Mrs. Watkins' statements regarding what the prosecutor told her are inadmissible hearsay. See Fed. R. Evid. 801(c) (hearsay is a statement offered in evidence to prove the truth of the matter asserted). Courts cannot consider inadmissible hearsay in an affidavit when ruling on a summary judgment motion. See Siple v. Sullivan, No. 99-3003, 1999 U.S. App. LEXIS 26472 (6th Cir. Oct. 14, 1999)(citing U.S. Structures, Inc. v. J. P. Structures, Inc., 130 F.3d 1185, 1189 (6th Cir. 1997)).

In addition, plaintiff has absolutely no evidence to support her contention that had she had a videotape of the incident, she would have prevailed on her request for a permanent protective order. In order to obtain her permanent civil stalking protective order, plaintiff had to provide evidence of a pattern of menacing conduct. (Transcript of hearing on permanent CPO, doc. 76, at p. 5). The video which plaintiff alleges was destroyed would have only recorded a single incident: the March 20, 2007 assault. (Watkins deposition at p. 180, stating the only evidence she claims was destroyed was the video of the March 20, 2007 incident). Plaintiff called an eyewitness to the assault, Kenetha Hart, who testified that a fight occurred on March 20, 2007 between plaintiff and Nixon. (Doc. 76 at pp. 37-47). Plaintiff has failed to show how the absence of additional evidence of the March 20, 2007 incident would have helped her establish a *pattern* of menacing conduct by Nixon. Moreover, plaintiff could have testified as to what occurred on March 20, 2007, and thereafter, but chose not to do so. The fact that plaintiff chose not to testify, and decided to present predominately hearsay evidence, could just have easily been the reason that she did not obtain the protective order. (See Transcript at p. 170, wherein Magistrate Pamela Erdy states " "I have some concerns about the fact that Amanda has

24

not testified").  Video evidence, if it existed, would not have provided anything more than what plaintiff could have testified to herself. See Nye v. CSX Transp. Inc., 437 F.3d 556 (6th Cir. 2006) (with sufficient evidence documenting how an accident occurred, it is highly unlikely that audiotapes would have shown anything different).   Finally, plaintiff as failed to show how she was damaged by her failure to obtain a permanent protective order.  Plaintiff has failed to produce sufficient evidence to raise a genuine issue of material fact on her spoliation of evidence claim.

### D.      Negligence and Qualified Immunity under Ohio Rev. Code Chapter 2744.

In her amended complaint, plaintiff alleges that NAPLS and the individual school defendants were negligent in failing to prevent misconduct by Nixon and in failing to take appropriate action against Nixon.  She does not allege a claim of negligence against Strahler or the Village.  She asserts that defendants acted maliciously, in bad faith, and/or in a wanton or reckless manner.  Summary judgment must be granted because the school defendants are entitled qualified immunity under Ohio Rev. Code Chapter 2744.

In determining whether a political subdivision is immune from liability the court applies a three-tiered analysis.  Elston v. Howland Local Sch., 113 Ohio St. 3d 314, 317 (2007).  The first tier provides a general grant of immunity, as found at Ohio Rev. Code 2744.02(A)(1), which provides:

> [A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

A school district is a political subdivision and the "provision of a system of public education" is a governmental function.  See, Ohio Rev. Code 2744.01(F); Ohio Rev. Code 2744.01(C)(2)(c). Thus, the general grant of immunity applies in this case.

The second step focuses on the exceptions to immunity set forth in Ohio Rev. Code §2744.02(B).  Under subdivision (B)(4), "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function."  Plaintiff asserts that NAPLS was negligent in failing to protect her from Nixon and in failing to provide the videotape of the assault to prosecutors.  Thus, this exclusion applies.  However, under the third step, immunity may be reinstated if the political subdivision can assert one of the defenses to liability set forth in Ohio Rev. Code §2744.03. See Elston, 113 Ohio St. 3d at 317.

NAPLS asserts that it is immune from liability pursuant to Ohio Rev. Code §2744.03(A)(5) which provides:

> The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

The individual school defendants also assert immunity from liability under Ohio Rev. Code §2744.03(A)(6) which provides that an employee of a political subdivision may be liable but only if his acts or omissions are outside the scope of his employment or his acts or omissions are with malicious purpose, in bad faith, or wanton or reckless.

In her deposition, the plaintiff articulated measures she believes the school should have taken. For instance, she testified that the school should have provided a police officer to sit with her in class for her safety. (Watkins deposition at p. 275). Plaintiff also testified that the school defendants should have taken it upon themselves to make sure Nixon was on a separate bus for all athletic events, even though the coach did in fact separate them. (Id. at p. 258). She also testified as to a general "lack of action" on the part of the school defendants. Plaintiff alleges that the failure to take these measures, and to preserve or provide the alleged video of the assault, were the result of recklessness, bad faith, or wanton misconduct.

The decision not to provide a police officer to personally escort plaintiff to class was an exercise of judgment or discretion in determining how to use personnel or other resources. Decisions regarding the seating of plaintiff and Nixon in their classes or the location of their lockers was also an exercise of judgment in use of resources. See Elston,113 Ohio St. 3d at 318 (teachers and coaches, as employees of a political subdivision, have "wide discretion under R.C. 2744.03(A)(5) to determine what level of supervision is necessary to ensure the safety of the children in" their care) (citations omitted)). As regards the alleged video, the court has already discussed at length the lack of evidence showing that a video even existed, let alone that anyone intentionally destroyed or lost the video.

There is simply no evidence that the defendants did anything other than exercise judgment or discretion and there is no evidence that it was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. In Ohio, an individual acts recklessly when he "does an act or intentionally fails to do an act which is in his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable person to realize, not only that his

conduct creates an unreasonable risk of recent physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Johnson v. Baldrick, CA2007-01-013, 2008 Ohio 1794 (Ct. App. Ohio Apr. 14, 2008). Wanton misconduct is "the failure to exercise any care whatsoever." Id. The plaintiff has failed to provide any evidence that would raise a genuine issue of material fact suggesting that any one of the individual school defendants acted without any care whatsoever or intentionally acted or failed to act in such a way that they knew it would create a substantial risk of harm to plaintiff.

On the other hand, the defendants have provided evidence that shows that the school defendants acted with concern and care towards plaintiff. Defendant LeMaster testified that when Nixon returned to school after the altercation, he was denied any hallway passes during classes because he needed to be under supervision by the school defendants. (LeMaster deposition at p. 45). LeMaster reviewed both Nixon and plaintiff's class schedules so that she could monitor the hallways when they were most likely to come into contact with one another. (LeMaster at p. 46). After she complained that Nixon was hanging around her locker, plaintiff's locker was moved to another area where it would be in view of a security camera. (LeMaster at p. 50). In the two classes which Nixon and plaintiff had together, Nixon's seat was moved away from plaintiff's seat. (Watkins depo at p. 133, 135). The defendants have provided evidence showing their concern for plaintiff that more than refutes plaintiff's bare allegations of ill will. The individual defendants are therefore entitled to immunity under Ohio Rev. Code Chapter 2744.

As regards Officer Strahler, plaintiff did not allege a claim of negligence against Officer Strahler in her complaint.[5]  However in her memorandum in oppsosition she asserts that there are material questions of fact regarding whether Officer Strahler's actions were outside the scope of employment and/or undertaken in bad faith or with wanton and reckless conduct.  In support of this allegation, plaintiff alleges that Strahler refused to take a police report after she and her mother reported that Nixon was in violation of the No Contact Order and temporary CPO.  She also alleges that Strahler told plaintiff to leave his office when she wanted to make a report and hung up the phone on plaintiff's mother when she asked him to make a report.  She argues that this is evidence of bad faith or wanton and reckless conduct.  Finally plaintiff asserts that Strahler should have acted to preserve evidence of the March 20, 2007 incident.  Plaintiff does not cite to the record in support of her factual contentions.

Plaintiff has failed to set forth facts demonstrating that Strahler's actions were outside the scope of his employment or done with malicious purpose, in bad faith, or in a wanton and reckless manner so as to lose immunity under Ohio Rev. Code §2744.03(A)(6).  Plaintiff has not alleged that Strahler "failed to exercise any care whatsoever or acted with the intent, purpose or design to injure."  See Shadoan v. Summit County Children Servs. Bd., No. 21486, 2003 Ohio 5775 (Ct. App. Ohio Oct. 29, 2003).  On the contrary, the evidence presented indicates that Officer Strahler took plaintiff's complaints seriously.  After plaintiff reported that Nixon was lingering near her classrooms in violation of the No Contact Order, Officer Strahler asked plaintiff to provide a copy of the No Contact Order.  She did not do so.   (Strahler Aff. At ¶5).

---

[5]     Nor did she allege a claim of negligence against the Village of New Albany and she has not provided any evidence in support of such a claim.

Plaintiff never informed Strahler that Nixon had physically touched her or threatened to touch her.  (Id.).  Officer Strahler then took it upon himself to contact the Franklin County Juvenile Court Prosecutor regarding the No Contact Order.  (Id. at ¶6).  Officer Strahler learned that the order was not enforceable by a law enforcement officer.  (Id.).  When plaintiff reported that Nixon violated the temporary CPO by interrupting a conversation she was having, she did not indicate that he physically touched her or threatened her.  (Id. at ¶7).  Strahler then obtained a copy of the order and noticed that the word "school" had been crossed out. (Id. at ¶8).  He took it upon himself to contact the New Albany Prosecutor and was informed that the order did not apply at school. (Id.). Officer Strahler informed plaintiff that she could make reports to the New Albany Police Department if she wanted to do so.  (Id. at ¶9).  Finally, there is not a single piece of evidence that Strahler had anything to do with the alleged destruction of the video recording. In sum, Strahler's conduct cannot be said to be either outside the scope of his duties as a school resource officer, nor done in bad faith or with wanton and reckless conduct. Strahler is entitled to immunity under Ohio Rev. Code §2744.03.

### E.     Res Judicata

The school defendants also argue that summary judgment is proper on the grounds of *res judicata*.  Having already determined that summary judgment is appropriate on all claims, the court need not address the *res judicata* issue.

## IV.    CONCLUSION

Based on the foregoing reasons, the motion for summary judgment of defendants NAPLS, Stewart, Stranges, Winston, Reeder, Fisher and LeMaster (doc. 72) is GRANTED.  The motion for summary judgment of defendants the Village of New Albany and Srahler (doc. 78) is

also GRANTED.   The clerk shall enter final judgment in favor of defendants NAPLS, Stewart,

Stranges, Winston, Reeder, Fisher and LeMaster, Village of New Albany and Strahler,

dismissing plaintiff's complaint against these defendant only with prejudice at plaintiff's cost.

The only remaining defendant is Gerald Nixon against whom the clerk has entered

default judgment. (doc. 42).  The court will schedule a final pretrial conference in the near

future.

IT IS SO ORDERED.


S/ James L. Graham_____
James L. Graham
UNITED STATES DISTRICT JUDGE

Date: May 10, 2010